***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and the named employer.
3. The carrier liable on the risk is Continental Casualty Insurance Company, with the claim being administered for the carrier by Crawford 
Company.
4. Plaintiff's average weekly wage is $156.28.
5. The depositions of Drs. Rosenblum and Serro are a part of the of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACTS
1. Plaintiff is a 52-year-old female, who was employed by Ryan's Steakhouse to work as a waitress on 23 May 2000.
2. On 24 May 2000, plaintiff was walking behind the cash register on her way to the serving bar, when she slipped and fell onto the floor.
3. Plaintiff fell on her left knee and tailbone and immediately experienced left knee pain. Anthony Bell, a co-employee, carried plaintiff to the emergency room of Nash General Hospital for treatment of her left knee injury.
4. Dr. Anant B. Singh, the emergency room physician at Nash General Hospital, ordered an x-ray of plaintiff's left knee, which revealed a small joint effusion, but no fracture or subluxation of the knee. Based on the x-ray and his examination of plaintiff, Dr. Singh's diagnosis was that the plaintiff had suffered a left knee contusion. Dr. Singh treated a large abrasion on plaintiff's left knee, gave her a Tetanus shot, and released her with Lortab 5 mgs.
5. On 31 May 2000, plaintiff presented herself to Dr. Samuel Wesonga of Boice-Willis Clinic for treatment of her left knee. Dr. Wesonga's diagnosis was that plaintiff was suffering from a left knee strain secondary to a fall at work and a left lower extremity neuralgia. He prescribed a knee brace and crutches and started her on Naproxen Sodium 550 mg and Lortab 5/500 mg. When plaintiff did not improve with this treatment, Dr. Wesonga referred her to Dr. Shepherd F. Rosenblum, an orthopedic surgeon practicing with Boice-Willis Clinic.
6. Dr. Wesonga was plaintiff's attending physician from 31 May 2000 until 16 June 2000. During this treatment period, Dr. Wesonga did not believe that plaintiff was physically capable of performing the duties of a waitress and, consequently, he requested that Ryan's Steakhouse excuse plaintiff from work.
7. Dr. Rosenblum became plaintiff's primary treating physician on 19 June 2000. After examining plaintiff on 19 June 2000, Dr. Rosenblum thought plaintiff had sustained a torn meniscus, as well as a contusion of the left knee. An MRI of the plaintiff's left knee confirmed that she had suffered an undersurface tear of the posterior horn and body of the medial meniscus in her left knee. Dr. Rosenblum performed a left knee arthroscopy on 18 July 2000 to repair the meniscus tear.
8. Dr. Rosenblum certified that plaintiff was incapable of work from 19 June 2000 to 28 July 2000, on which date, he released her for desk work only, defined "as any type of job where somebody sits at a desk where they're not required to squat, kneel, stand, lift, [or] carry loads on a frequent basis." Defendant-employer had no such position available for plaintiff.
9. On 21 August 2000, plaintiff returned to Dr. Rosenblum complaining of left knee and leg pain. Dr. Rosenblum could find no physical reason for plaintiff's continuing left knee pain. Dr. Rosenblum concluded that plaintiff was possibly in the early stages of developing reflex sympathetic dystrophy in the left knee and leg. Reflex sympathetic dystrophy (RSD) is an exaggerated pain response to trauma.
10. Dr. Rosenblum continued to treat plaintiff for left knee pain and reflex sympathetic dystrophy until 4 October 2000. Thereafter, plaintiff's treatment was transferred to Dr. Robert J. Serro, a physiatrist with Carolina Rehabilitation and Surgical Associates. Dr. Serro is primarily involved in pain management for injured persons.
11. Dr. Serro examined plaintiff on 10 October 2000. His examination revealed that her left knee was red and swollen. Plaintiff had a history of falling on the left knee and arthroscopic surgery on the knee, which were events that could precipitate a mediated pain syndrome or RSD. Based on his examination of plaintiff and plaintiff's history, Dr. Serro concluded that plaintiff had developed a mediated pain syndrome as a direct consequence of her left knee injury.
12. Dr. Serro treated plaintiff for left knee and left leg RSD from 10 October 2000 to 2 July 2001. During this period, Dr. Serro treated plaintiff's injury with Neurotin and physical therapy. Plaintiff became depressed secondary to the continuous pain and disability caused by her left knee, for which Dr. Serro prescribed Zoloft. On 2 July 2001, Dr. Serro noted that the redness and swelling were no longer present in plaintiff's left knee, but that the pain was still present. Dr. Serro suggested, but plaintiff has postponed, sympathetic blocks to relieve the pain in her left knee to facilitate more physical therapy.
13. Dr. Serro is of the opinion that plaintiff was incapable of doing any work because of left knee pain from 10 October 2000 through 2 July 2001, which was the last time he examined her. It was also his opinion that it will be difficult for plaintiff to return to work because of her RSD.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. All parties are properly before the Commission, and the Commission has jurisdiction to decide this claim.
2. Plaintiff's fall on 24 May 2000 arose out of her employment and occurred during the course and scope of her employment and is compensable under the Workers' Compensation Act.
3. The injury to plaintiff's left knee was the direct and proximate result of her fall on 24 May 2000. Plaintiff was incapable of earning any wages as a result of her left knee injury from the time of her fall on 24 May 2000 to 28 July 2000, when Dr. Rosenblum released her for deskwork only. Since defendant-employer had no deskwork, plaintiff did not return to her former employer, defendants shall provide vocational rehabilitation services in an effort to return plaintiff to a deskwork type position.
4. Plaintiff developed reflex sympathetic dystrophy as a direct and natural consequence of her left knee injury. Reflex sympathetic dystrophy has rendered plaintiff temporarily and totally disabled from 10 October 2000 to present and continuing.
5. As a result of the left knee injury on 24 May 2000 and the resulting reflex sympathetic dystrophy, plaintiff is entitled to temporary total disability benefits for the period of 24 May 2000 to present and continuing at the rate of $104.24 per week. Plaintiff is entitled to continuing weekly compensation benefits at the rate of $104.19 per week until further order of the Commission.
6. Plaintiff is entitled to the payment of or reimbursement for all medical expenses incurred or to be incurred by her, or any carrier paying said expenses on her behalf, for treatment of her left knee or her RSD.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability benefits to plaintiff at the compensation rate of $104.24 per week from 25 May 2000 to present and continuing until plaintiff returns to gainful employment or until further order of the Commission. The compensation that has accrued shall be paid in a lump sum.
2. Defendants shall pay and/or reimburse all medical expenses incurred or to be incurred by plaintiff for the treatment of her left knee injury and resulting RSD.
3. An attorney's fee in the amount of twenty-five percent (25%) of the Award is hereby approved for plaintiff's attorney. Twenty-five percent of the Award that has accrued shall be deducted and shall be sent directly to plaintiff's attorney. In addition, every fourth check due plaintiff shall be sent directly to plaintiff's attorney.
5. Defendants shall provide vocational rehabilitation services to plaintiff in an effort to return her to gainful employment. Said vocational rehabilitation services shall be approved by plaintiff's treating physician prior to beginning. Plaintiff shall fully cooperate with said services, once approved by the treating physicians.
6. Defendants shall pay the cost due the Commission.
This the ___ day of July 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER